UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **KILGORE MARINE SERVICES, INC.** | * | **CIVIL ACTION NO. 07-1609** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **FIREMAN'S FUND INSURANCE CO., ET AL** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION
## ON MOTION TO DISMISS THIRD PARTY DEMAND

Pending before the undersigned for report and recommendation is the Motion to Dismiss Third Party Demand filed by Cliffe E. Laborde, III ("Laborde") on March 5, 2008. [rec. doc. 11]. Defendants, Fireman's Fund Insurance and Houston Casualty Company (collectively, the "Excess Insurers"), filed opposition. [rec. doc. 14]. Laborde filed a reply brief [rec. doc. 19].

On April 16, 2008, the undersigned held oral argument on the motion, and took the motion under advisement. [rec. doc. 20]. Laborde filed a post-hearing memorandum. [rec. doc. 25].

For the following reasons, it is recommended that the motion be **GRANTED**.

## Background

Kilgore Marine Services, Inc. ("Kilgore") was the owner/operator of the offshore supply vessel K MARINE VI. On or about April 19, 2006, the K MARINE VI, while in the South Timbalier Block 42 of the Gulf of Mexico, allided with the port stern of the jack up drilling rig PRIDE GEORGIA, causing damage to the rig. The PRIDE GEORGIA is owned/operated by Pride Offshore, Inc. ("Pride").

At the time, Kilgore provided the vessel K MARINE VI to Energy Partners Ltd. ("EPL") pursuant to a Blanket Time Charter. Pride supplied the jack up rig to EPL pursuant to an Offshore Daywork Drilling Contract.

During all pertinent times, Kilgore had a $1 million primary protection and indemnity ("P & I") policy with Zurich American Insurance Company and Fireman's Fund Insurance Company. Additionally, Kilgore maintained a $20 million excess P & I policy issued by the Excess Insurers.

Kilgore reported the claim to its insurance agent, who notified the primary and excess carriers. Kilgore informed the carriers that the allision was caused by the fault of its captain. The primary insurers retained LaBorde to represent Kilgore and the primary insurers in the matter.

The primary insurers tendered their $1 million in partial settlement of the claim. Afterwards, a dispute arose as to whether or not Teresa Hall, the adjuster handling the excess claim on behalf of Fireman's Fund Insurance Company, had authorized Laborde to settle the excess claim. Charles Kilgore, the president of Kilgore, settled all claims arising out of the incident for $2,802,602.00, which he paid to Pride.

On September 26, 2007, Kilgore filed a breach of contract action against Excess Insurers for their failure to fund the remaining portion of the settlement in the amount of $1,802.602. [rec. doc. 1]. The Excess Insurers then filed an answer and third party demand against Laborde, alleging that liability was caused by Laborde's fault, neglect, malpractice and/or malfeasance. [rec. doc. 3]. The Excess Insurers also tendered Laborde as a directly liable defendant pursuant to Fed.R.Civ. P. 14(c).

On March 5, 2008, Laborde filed the instant motion to dismiss on the grounds that: (1) the Rule 14(c) tender was improper in that the main demand against the Excess Insurers did not arise from this Court's admiralty jurisdiction; (2) the Excess Insurers could not assert any liability which Laborde might have to Kilgore; (3) the Excess Insurers' legal malpractice claim was not cognizable under Louisiana law, and (4) the Excess Insurers were not subrogated to any legal

3

malpractice claim that Kilgore might have against Laborde. [rec. doc. 11]. The undersigned held oral argument on the motion on April 16, 2008. Laborde filed a post-hearing memorandum on April 23, 2008. [rec. doc. 25].

## Law and Analysis

### *Standard for Motion to Dismiss*

In deciding a Rule 12(b)(6) motion to dismiss, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (*citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), *petition for cert. filed*, (U.S. Nov. 26, 2007) (No. 07-713)). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.*; *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citation and footnote omitted).

In resolving a Rule 12(b) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint. *Cyrio v. Hunt*, 2007 WL 2772222 at * 4 (E.D. La. Sept. 19, 2007). However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the

4

complaint may be taken into account. *Id.* (*citing Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir.1990)). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir.2004) (*citing Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.2000)).

### ***Rule 14(c) Tender***

Laborde argues that because the complaint invoked this Court's diversity jurisdiction, and not it's admiralty and maritime jurisdiction, that Excess Insurers do not have the right to tender Laborde as directly liable to Kilgore under Fed. R. Civ. P. 14(c).

Rule 14(c)[1] provides as follows:

> (c) **Admiralty and Maritime Claims**. When a **plaintiff** asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or person who asserts a right under Supplemental Rule C(6)(a)(1), as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. In such a case the third-party plaintiff

---

[1] This Rule was amended on April 30, 2007 and effective December 1, 2007, which was after the date of filing this lawsuit.

may also demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make any defenses to the claim of the plaintiff as well as to that of the third-party plaintiff in the manner provided in Rule 12 and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff. (emphasis added).

Rule 9(h) Fed. R. Civ. P., provides as follows:

(h) **Admiralty and Maritime Claims**. A pleading or count **setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground** may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), and 82, and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not. The amendment of a pleading to add or withdraw an identifying statement is governed by the principles of Rule 15. A case that includes an admiralty or maritime claim within this subdivision is an admiralty case within 28 U.S.C. § 1292(a)(3). (emphasis added).

A review of the complaint reflects that jurisdiction was asserted on the basis of diversity only. [rec. doc. 1, ¶ 2]. In opposition, the Excess Insurers argue that because the underlying dispute centers on marine insurance and that since the defenses and the third party demand involves maritime law, that this case is maritime in character, and therefore Rule 14(c) applies.

6

However, Rule 14(c) clearly provides that the *plaintiff*, not the defendant, has to assert a maritime or admiralty claim for the tender to be proper under Rule 14(c).

Additionally, Rule 9(h) provides that where a claim is based on the jurisdiction of the district court on a ground *other than* the court's admiralty and maritime jurisdiction, Rule 14(c) will apply only if the pleading *also* sets forth a claim for relief under the court's admiralty and maritime jurisdiction. As Judge Scott said in *Harrison v. Glendel Drilling Co.*, 679 F.Supp. 1413 (W.D.La.1988):

> A defendant may invoke Rule 14(c) (1) whenever **the plaintiff has asserted a claim which has been specifically identified in the complaint as one in admiralty** pursuant to Rule 9(h), or (2) when it is apparent from a reading of the complaint that admiralty jurisdiction is the only basis for federal subject matter jurisdiction over the action. Fed.R.Civ.P. 9(h), 14(c); 6 Wright & Miller, supra, at 343. Under Rule 9(h) no specific "identifying statement" is necessary "[i]f the claim is cognizable only in admiralty." However, where the complaint shows that both admiralty and some other basis of federal jurisdiction exist, the plaintiff must employ an "identifying statement" in accordance with Rule 9(h) in order to be entitled to the special benefits afforded to admiralty litigants under the Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims. (emphasis added).

At p. 1418.

In *Harrison*, Judge Scott made it clear that the *plaintiff*, not the defendant, must designate the claim as one in admiralty for Rule 14(c) to apply. Additionally,

Judge Scott clearly recognized that the *plaintiff* must employ an "identifying statement" under Rule 9(h) in order for the admiralty and maritime rules to apply. As the pleadings currently stand, the plaintiff has not done so in this case. Accordingly, the undersigned finds that the tender was improper under Rule 14(c).

### *Excess Insurers' Right to Assert Liability*

Next, Laborde asserts the third-party demand is improper under Rule 14(a), which provides that a defendant "may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Thus, Laborde argues, the third-party demand cannot be based on his alleged liability to Kilgore, but must be based upon Laborde's direct liability to the Excess Insurers. *See McCain v. Clearview Dodge Sales, Inc*., 574 F.2d 848, 849 -850 (5th Cir. 1978) ("a third-party complaint is not proper under Rule 14 if the defendant cannot show a basis for the third-party defendant's liability to the defendant (also known as the third-party plaintiff).").

In response, Excess Insurers argue that they assert Laborde's liability to them is based on subrogation, joint representation and/or as a Rule 14(c) tender. [rec. doc. 14, page 7].

### (a) Legal Malpractice

In the alternative, the Excess Insurers allege a legal malpractice claim against Laborde. [rec. doc. 3, third-party demand at ¶ 20].

Laborde argues that a non-client cannot assert a legal malpractice claim against an attorney; thus, the Excess Underwriters have no claim against Laborde. Since this Court's diversity jurisdiction, only, has been invoked, *Erie*[2] requires that the law of Louisiana be applied in this case .

In *Penalber v. Blount*, 550 So.2d 577 (La.1989), the Louisiana Supreme Court held an attorney may not be held liable to a non-client for malpractice or negligence, but could be held liable to a non-client for intentional tortious conduct. *Id*. at 582. The Supreme Court affirmed its holding that Louisiana Law expressly recognizes an attorney has no duty to a non-client for malpractice or breach of a professional duty in *Montalvo v. Sondes*, 93-2813 (La. 5/23/94); 637 So.2d 127, 130 (the only claim a non-client can allege against counsel for another party is for intentional torts inflicted with malicious intent). *See also Doyle v. Landry*, 67 Fed.Appx. 241, *5 (5th Cir. 2003).

---

[2] *Erie R.R. v. Tompkins*, 58 S.Ct. 817 (1938).

Recently, Judge Doherty, of this Court, expounded on this rule as follows:

> Louisiana law recognizes that an attorney's paramount duty is, and must be, to his client. *Penalber v. Blount*, 550 So.2d 577, 581 (La.1989). In *Penalber*, the Louisiana State Supreme Court expressed an attorney must have undivided loyalty to his client and may not "serve two masters:"
>
> Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf. *A non-client, therefore, generally cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation*. The intent of this rule is not to reduce an attorney's responsibility for his or her work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of the loyalty owed a client. (emphasis added).

*United States Fidelity & Guaranty Company v. E. L. Habetz Builders, Inc.* 2007 WL 2028163, *5-6 (W.D.La. 2007).

Here, the complaint indicates that Laborde was retained to represent Kilgore and the primary insurers. [rec. doc. 1, ¶¶ 12, 17]. The Excess Insurers specifically deny that Laborde represented them as counsel. [rec. doc. 14, p. 8]. Because the Excess Insurers were non-clients, they cannot hold Laborde personally liable for either malpractice or negligent breach of a professional obligation. Even if Laborde was not representing ( had least technically) an adversarial party in this case, the rationale for this rule nevertheless applies: Laborde's duty was to his client(s) and not Excess Insurers. A different holding would have a chilling effect

10

on counsel's representation of his own client and would necessarily lead to a division of loyalty owed by counsel to his client. This is impermissible. *Doyle*, supra.

Alternatively, the Excess Insurers argue that if Laborde is deemed to be their counsel on October 11, 2006 (the day Laborde allegedly offered to settle the excess claim without authority), which they deny, then Laborde owed a fiduciary duty to them, *citing Teague v. St. Paul Fire and Marine Ins. Co.*, 974 So.2d 1266, 1271 (La. 2008) ("This fiduciary duty [attorney's duty to his client] obligates the attorney to exercise at least that degree of care, skill, and diligence exercised by prudent attorneys practicing in his community or locality."). That case is distinguishable, however, because the plaintiff in *Teague* filed a legal malpractice claim against the law firm representing his *own* insurer and *himself* for settling a medical malpractice suit without his authority. (emphasis added).

As Laborde did not represent the Excess Insurers in this case, they have no claim for legal malpractice against him. There has been no claim asserted for any intentional act committed by Laborde to Excess Insurer's detriment. Thus, this argument lacks merit.

**(b) Subrogation**

In support of his argument that the Excess Insurers may not pursue a third-party demand for legal malpractice by way of subrogation against the insured's attorney, Laborde relies on *St. Paul Ins. Co. Of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274 (5th Cir. 1991). There, the excess liability insurance carrier had filed suit against the primary liability insurance carrier, and the law firm representing the primary insurer, for failing to settle a personal insurance claim against the insured. The matter went to trial, and a jury verdict was rendered in excess of the settlement offers and primary policy limit. After a remittitur, the case settled for $1.1 million, with the excess insurer contributing $213,314.94 to this amount.

In its amended complaint, St. Paul (the excess insurer) claimed that the law firm was liable to it under a third-party beneficiary theory. The Fifth Circuit rejected that claim, finding that an excess insurer did not have a right of subrogation against an attorney for the primary insurer. *Id*. at 279. However, this case is distinguishable because it involves a first-party claim, not a third-party claim, as is the case here.

While the Excess Insurers cite several cases to support the proposition that an excess insurer could bring an equitable subrogation claim against a primary

12

insurer and its counsel, none of the cited cases are from Louisiana. In a diversity case a district court looks to the forum state to select choice of law rules. *Erie* and *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The principle of equitable subrogation does not exist in Louisiana. *Society of Roman Catholic Church of Diocese of Lafayette, Inc. v. Interstate Fire & Casualty Co.*, 126 F.3d 727, 743 (5th Cir. 1997); *Liberty Mut. Ins. Co. v. Jotun Paints, Inc.*, 2008 WL 819078, * 4 (E.D. La. Mar. 25, 2008).

Under Louisiana law, conventional subrogation is defined as follows:

> An obligee who receives performance from a third person may subrogate that person to the rights of the obligee, even without the obligor's consent. That subrogation is subject to the rules governing the assignment of rights.

LA. CIV. CODE ANN. art 1827 (1985).

The article on assignability of rights provides:

> All rights may be assigned, *with the exception of those pertaining to obligations that are strictly personal*. The assignee is subrogated to the rights of the assignor against the debtor.
> (emphasis added).

LA. CIV. CODE ANN. art 2642 (1995)

Louisiana law holds that the obligation of an attorney to his client is a personal, rather than heritable, obligation. *Succession of Zatarain*, 138 So.2d 163, 165 (La. App. 1st Cir. 1962). Thus, a legal malpractice claim is not subject to

13

assignment. This seems to be the rule in the majority of jurisdictions. *See General Sec. Ins. Co. v. Jordan, Coyne & Savits, LLP*, 357 F.Supp.2d 951, 958-59 (E.D.Va. 2005) ("In Virginia as in most other jurisdictions, a claim for legal malpractice is not assignable"); *Essex Ins. Co. v. Tyler*, 309 F.Supp.2d 1270, 1274 (D.Colo. 2004) ("the Court of Appeals clearly prohibits the assignment of legal malpractice claims on the policy interests of the 'highly confidential and fiduciary relationship existing between attorney and client' and the compromised duty of loyalty to the attorney's client based on the anticipation of 'possible legal malpractice claims' by third parties."); *National Union Fire Ins. Co. v. Salter,* 717 So.2d 141, 142 (Fla.App. 5 Dist. 1998) ("Florida law views legal malpractice as a personal tort which cannot be assigned because of the personal nature of the legal services which involve highly confidential relationships"). Accordingly, conventional subrogation does not apply here.

As to legal subrogation, LA. CIV. CODE ANN. art. 1829 (2001) provides as follows:

> Subrogation takes place by operation of law:
>
> (1) In favor of an obligee who pays another obligee whose right is preferred to his because of a privilege, pledge, mortgage, or security interest;

(2) In favor of a purchaser of movable or immovable property who uses the purchase money to pay creditors holding any privilege, pledge, mortgage, or security interest on the property;
(3) In favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment;

(4) In favor of a successor who pays estate debts with his own funds; and

(5) In the other cases provided by law.

Laborde and the Excess Insurers agree that subsection (3), which provides that legal subrogation takes place "[i]n favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment," is the subsection most applicable here.

Laborde relies on the Louisiana Supreme Court's interpretation of legal subrogation in *Great Southwest Fire Ins. Co. v. C.N.A. Ins. Cos.*, 557 So.2d 966 (La. 1990), which held that an excess insurer may become subrogated to an insured's rights against its primary insurer to assert bad faith failure to settle a claim, which ultimately results in the excess insurer's making a payment on behalf of the insured. In reaching its decision, the court reasoned as follows:

> Legal subrogation takes place when an obligor pays a debt he owes with others or for others and who has recourse against those others as a result of the payment. La.C.C. art. 1829(3). Transportation [the primary insurer] argues that Great Southwest [the excess carrier] did not become subrogated under this provision to the insured's claim

> against it for damages due to its failure to perform in good faith because Great Southwest did not owe the debt with or for Transportation. *It is well established, however, that an obligor owes a debt with or for another if he is solidarily obliged with that person to perform the obligation*. [internal citations omitted]. It also seems clear that Transportation and Great Southwest were solidarily obliged to the insured to pay on its behalf the portion of the judgment in excess of the primary policy limits.
>
> The essential elements of a solidary obligation are that the obligors are obliged to the same thing, that each is liable for the whole performance, and that the payment by one relieves the others of liability toward the obligee. La.C.C. art. 1794. [internal citations omitted]. Transportation and Great Southwest were each obliged to pay off the portion of the judgment against the insured in excess of Transportation's policy limits caused by the primary insurer's bad faith failure to settle and to defend the insured properly. Each was liable for the whole performance, and the payment by either would have relieved the other of liability to the insured. (emphasis added)

*Id*. at 968.

Relying on *Great Southwest*, Laborde argues that because the Excess Insurers are not solidarily liable with him to Kilgore, they are not legally subrogated to Kilgore's rights against Laborde.

The Excess Insurers argue that one who owes a debt with, or for, another is not necessarily always a solidary obligor, citing *Aetna Ins. Co. v. Naquin*, 488 So.2d 950 (La. 1986). In *Aetna*, the court held, in pertinent part, that "it is unnecessary to examine the relationship of the parties for solidarity as we have concluded that LSA-C.C. art. 2161(3) [predecessor to art. 1829(3)] does not

require solidarity." *Id*. at 954. However, in *A. Copeland Enterprises, Inc. v. Slidell Memorial Hospital*, 94-2011 (La. 6/30/05); 657 So.2d 1292, a case decided **after** *Aetna Ins. Co. v. Naquin*, the Louisiana Supreme Court determined that under article 1829(3), "the *initial inquiry* is whether the obligor is bound 'with . . . or for others,' and in order for an obligor to be bound, the obligation must be solidary and indivisible." (emphasis added). *Id*. at 1297; *see also Liberty Mut. Ins. Co. v. Jotun Paints, Inc.*, at *4. Thus, under Louisiana law, solidary liability is required for legal subrogation to occur.

A similar subrogation issue was addressed by the Fifth Circuit in *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 276 (5th Cir. 1991). There, an excess liability insurance carrier had filed suit against the primary liability insurance carrier and its law firm for negligently and in bad faith failing to settle a personal injury maritime claim. In its amended complaint, the excess insurer had asserted that the law firm was liable to it under a third-party beneficiary theory.

The Fifth Circuit cited *Great Southwest's* holding that subrogation was available to the excess carrier where it had made payment on behalf of the insured. However, the court in *St. Paul* observed that *Great Southwest* did not address the issue of whether the attorney appointed to represent a primary insurer owed a

17

similar duty to the excess insurer. In holding that the district court's dismissal of the law firm was proper, the Fifth Circuit reasoned as follows:

> Absent privity of contract, an attorney may make himself personally liable to third parties only if he exceeds the limits of his agency. [internal citations omitted]. In the alternative, an attorney may be answerable to a non-client for malpractice where the offended party is able to establish fraud or collusion. [internal citations omitted]. Excess Insurer does not allege that Deutsch's [the law firm's] actions fell within either of these exceptions. Instead Excess Insurer relies on the same theory it asserts against Primary Insurer – breach of its duty adequately to represent the Insured. Such a cause of action is not recognized in Louisiana. Furthermore, while Great Southwest authorized a right of action pursuant to subrogation by an excess insurer against a primary insurer, it did not address the issue of whether the attorney appointed to represent a primary insurer, here Deutsch, owes a similar duty to the excess insurer. *Id*. at 279.

As the Excess Insurers have not alleged that Laborde's actions fell within either of these exceptions, it cannot assert a claim for malpractice against Laborde. Additionally, since *St. Paul* held that an excess insurer does not have a right of subrogation against an attorney appointed to represent a primary insurer, the Excess Insurers have no cause of action on that basis against Laborde.

## **Conclusion**

Accordingly, **IT IS RECOMMENDED** that the motion to dismiss be **GRANTED.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

July 17, 2008, Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE